SCANNED
DATE:
BY:

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MASSACHUSETTS

ASHWANI D. BUDHIRAJA,

Plaintiff

v.                                                        C.A. No. 05-11820-EFH

LIFE INSURANCE COMPANY OF
NORTH AMERICA ("LINA"),

Defendant

## AMENDED COMPLAINT

### INTRODUCTORY STATEMENT

This action is commenced by Ashwani D. Budhiraja (hereinafter "Plaintiff" or "Budhiraja") against LIFE INSURANCE COMPANY OF NORTH AMERICA (hereinafter "Defendant" or "LINA") in order to remedy or seek relief for the Defendant's unlawful and discriminatory practices, in violation of, inter alia, the Employee Retirement Income Security Act of 1974, 29 U.S.C. Sections 1001-1461, in addition to certain statutory and common law claims.

### JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C.A. Section 1331 and 29 U.S.C. 1132(e), with respect to issues arising under federal statutory law. Moreover, this action involves claims between citizens of different states, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs, vesting jurisdiction in this Court pursuant to 28 U.S.C.A. Section 1332.

DOCKETED

2. Venue is proper in this Court pursuant to 28 U.S.C. 1391 (b) and (c), because, inter alia:

- a.  the unlawful practices complained of herein were committed in this judicial district;

- b.  all records relevant to the allegations at issue herein are maintained and administered in this judicial district;

- c.  the Plaintiff would currently be enjoying all rights, benefits, and privileges of his disability insurance coverage, in this judicial district, but for theDefendant's unlawful practices.

3.  The practices hereafter alleged to be unlawful were, and are now, being committed in the Commonwealth of Massachusetts. Considerations of judicial economy, convenience, and fairness to the litigants warrant exercise of this Court's supplemental jurisdiction with respect to Plaintiff's state law claims. Plaintiff's state claims are so related to Plaintiff's federal claims that they form part of the same case or controversy. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. 1367(a).

THE PARTIES

4. The Plaintiff, Ashwani D. Budhiraja, is a resident of the town of Rehoboth, Massachusetts.

5. The Defendant LINA, is a foreign corporation, believed to maintain a principal place of business in Dallas, Texas, and conducting business in the Commonwealth of Massachusetts, by providing insurance services to various clients through or on behalf of CIGNA or CIGNA Group Insurance, or other entities with which it has or maintains an affiliate or subsidiary relationship. In this instance, CIGNA Group Insurance products and services, including long term disability insurance products, were provided by underwriting subsidiaries of CIGNA Corporation, including LINA, the Defendant in this action. In the instant matter, such services were provided by the Defendant to INVENSYS PROCESS SYSTEMS (INVENSYS), Plaintiff's employer at the time of the incidents giving rise to this Complaint. INVENSYS is a foreign corporation which maintains facilities and conducts business at various locations within the Commonwealth of Massachusetts.

6. At all times pertinent to the allegations of this Complaint, the Defendant conducted business, and is continuing to conduct business, in the Commonwealth of Massachusetts.

7. At all times pertinent to the allegations of this Complaint, the following individuals were employees of the Defendant and/or its pertinent affiliates, and held the status of persons acting in the interest of, on behalf of, or as agents of the Defendant:

a. Patti Holt, CIGNA Appeal Claim Manager

b. Medha Bharadwaj, Appeals Claim Examiner

c. Chad Terra, CIGNA Case Manager

d. Stuart Snyder, MD

### FACTS APPLICABLE TO EACH COUNT

8. At all times material to this Complaint, Plaintiff was an employee of Invensys.

9. Invensys maintains a contract with Defendant LINA, directly and/or through CIGNA Corporation or one of its other affiliates, to provide various insurance coverage to its employees, including long term disability insurance coverage. The Plan Administrator of the Employee Benefit Plan at issue in this action has selected the Defendant as the fiduciary for the review and determination of claims for benefits under federal law.

10. The Defendant's applicable policy definition of "disability/disabled" status states that an employee is considered disabled if, solely because of injury or sickness, he or she is either:

   a. unable to perform all the material duties of his/her regular occupation or a qualified alternative; or

   b. unable to earn 80% or more of his or her indexed covered earnings.

11.     The Plaintiff suffers from coronary artery disease, angina, and hypertension, as well as resulting emotional impairments caused by his physical diseases for which he is required to take medication.

12.     Since during or about November 2002, Plaintiff has been unable to perform the material duties of his regular occupation.

13. During or about 2000, the Plaintiff developed coronary artery disease. He underwent cardiac catheterization, including stent implantation. Following closure of the stent site, the Plaintiff required brachy-therapy. After the cardiac catheterizations, he experienced various complications, including bacterial endocarditis and a stroke. To date, he continues to suffer from recurrent angina, and continues to present symptoms of ischemia in the infero apical region of the heart.

14.     Plaintiff's job requires substantial travel, both domestic and international, in order to fulfill the duties of his position. Plaintiff's job duties are not primarily sedentary.

15.     Plaintiff filed for disability benefits through the Defendant, complying in all respects with any and all timeframes and procedural requirements pertinent to his application for long term disability benefits. In addition to other information, Plaintiff submitted complete copies of all medical records and other pertinent documents pertaining his coronary artery disease, angina, and hypertension.

16.    On or about March 15, 2004, and on or about August 13, 2004, Defendant denied the Plaintiff's application for long-term disability benefits.

17.    Defendant's denial of Plaintiff's benefits was predicated primarily, or in significant part, based on input from what Defendant described as a "health care professional with the appropriate training and experience in the field of medical [sic] involved in the medical judgment." To meet this self asserted requirement, Defendant requested a peer review from a cardiologist, Dr. Stuart Snyder.

18.    Defendant asserted that Dr. Snyder reviewed the medical records in the Plaintiff's file.

19.    Dr. Joseph DiNicola is the Plaintiff's primary treating physician.  Dr. DiNicola's records, submitted to Defendant, confirm and substantiate his opinion that the Plaintiff remains completely disabled as a result of his ongoing medical condition.  To date, Plaintiff continues to suffer from recurrent angina, and continues to present symptoms of ischemia in the infero apical region of the heart.

20.    The facts indicate that Dr. Snyder never consulted with Dr. DiNicola prior to issuing his so-called peer review, despite Defendant's assurance to the Plaintiff that Dr. Snyder would do so.

21.     Dr. Snyder's review, on which Defendant appears to rely almost exclusively, or in significant part, in reaching its decision to deny Plaintiff's benefits, focuses primarily on the Plaintiff's ability to "get to work."

22.     Dr. Snyder opines that certain alternative treatment regimens may be helpful relative to Plaintiff's continuing disability, a factor that should have no bearing on the Defendant's decision to deny benefits.  Plaintiff is not required to undergo any procedures or treatment which, in consultation with his physician, he believes is unjustified and potentially harmful, simply because Defendant's peer review physician theorizes that such speculative treatments might be helpful.

23.     In a letter dated August 13, 2004, Defendant stated that "[Plaintiff's] occupation as a Cost Reduction Engineer does not require [Plaintiff] to drive…as driving is not a material duty of [Plaintiff's] occupation, we are unable to approve [Plaintiff's] benefits based on [Plaintiff's] inability to get to work."

24.     Defendant's reason for denying Plaintiff's long-term disability benefits, as referenced in the preceding paragraph, was based on nothing other than Dr. Snyder's conclusion that the main issue with Plaintiff's work functionality was his ability to get to work, rather than performing what Dr. Snyder speculated was the Plaintiff's "full time sedentary occupation."

25.    Dr. Snyder evidently reached the conclusion referenced in the preceding paragraph without even consulting with Plaintiff's treating physician and without reviewing Plaintiff's up to date job description or any other information pertinent to Plaintiff's actual and essential job functions.

26.    Dr. Snyder and Defendant have identified no information or data on which they have premised a conclusion that Plaintiff is performing a full time sedentary job.

27.    Dr. Snyder's original "draft" report, as distinct from the subsequent "addendum" to that report, recognizes the fact that the practicalities of "getting to and from the job" would "greatly impact on [Plaintiff's] practical functional capacity." This obvious qualification regarding Dr. Snyder's assessment of Plaintiff's functional abilities is deleted in his addendum to that report, despite the fact that there is no indication in any correspondence from Defendant relative to the information upon which Dr. Snyder or Defendant have relied in making the sweeping determination that Plaintiff's ability to travel is unrelated to the essential requirements of his job.

28.    With no evidence upon which to rely, Defendant and their medical consultant have arbitrarily reduced the issue of Plaintiff's ongoing disability to the minor issue of "getting to and from the job."

29.     Without reasonable explanation or evidence, Defendant have presumed that the essential function of Plaintiff's job are sedentary and that travel, as opposed to what they view as simply commuting to and from work, is not an essential function of Plaintiff's job.

30.     The facts indicate that Plaintiff's job requires frequent travel during his regular and normal work schedule, in order for him to accomplish his regularly assigned job objectives and responsibilities.

31.     Plaintiff's     actual     job     title     is     Principal     Consultant-Cost Reductions/Productivity Improvements, in the Invensys Process Systems Division.   In this position, it is Plaintiff's responsibility for identifying and implementing cost reductions and improvements in all Process Systems plants and sites, *both domestic and international*.

32.     It is a significant and essential part of Plaintiff's job that he travel to both domestic and international sites, in an effort to establish viable partnerships with vendors and plant personnel.

33.     The job description relied upon by Defendant in reviewing Plaintiff's job duties was outdated, as Defendant were so informed.   The actual and accurate job description states that the Plaintiff's job "*requires* travel to both domestic and international sites to establish viable partnerships with vendors and plant personnel to

achieve established cost reduction objectives." This requirement is specifically and clearly listed as a "*Basic Function*" of Plaintiff's job.

34.    Plaintiff's job description also states facts indicating that a significant portion of Plaintiff's job responsibilities require him to interact with local management and various plant engineers, as well as various plant personnel, with various technical aspect of his employer's design, manufacturing and assembly functions.

35.    Plaintiff's office is located in a remote area, some distance from even the local plants. There are three local plants within a 21 mile radius from his home office. Plaintiff's job requires that he be able and available to be physically present in any of his employer's plants on a regular basis, and he is frequently required to travel from site to site.

36.    In his appeal of Defendant denial of benefits, Plaintiff submitted substantial information regarding his travel with respect to his employer's plants in the Commonwealth of Massachusetts, as well as the fact that the employer maintains 28 domestic plants/sites and 14 international plants/sites.

37.    Plaintiff is also required to attend off-site training seminars and staff meetings, as well as other functions, at multiple times during the year.

38.    Plaintiff's travel on behalf of his employer is well documented.  His current period of disability commenced during or about November of 2002 to the present. Any fluctuation in travel during these periods reflect his employer's temporary and short-term effort to accommodate Plaintiff's disability, and the limitations driving therefrom, not any change in the essential requirements of his job, requirements that have remained unchanged during the past five year period.

39.    If travel were removed from Plaintiff's job duties, it would fundamentally alter the character of his position.

40.    As a result of his expertise, education and background, Plaintiff was hired to perform a particular and specialized function.  The fact that this function includes substantial travel is substantiated by Plaintiff's job description, his travel history, his travel expense reimbursement documentation, as well as other irrefutable evidence.

41.    Nevertheless, in a cavalier and arbitrary disregard of record facts, and without a good faith investigation and evaluation of those facts, Defendant denied Plaintiff's application for long-term disability benefits on the basis that "driving is not a material duty of Plaintiff's occupation."

42.    As requested by Defendant's agents and representatives, including but not limited to those referenced in Paragraph 8, above, Plaintiff has supplied any and all

medical documentation pertinent to and substantiating his medical condition, as well as his eligibility for benefits, within the policy definition supplied by the Defendant.

43.    Plaintiff's treating cardiologist, Joseph DiCola, has consistently and repeatedly opined, to a reasonable degree of medical certainty, and premised on his treatment of the Plaintiff, that the Plaintiff is totally disabled from performing the material duties of his current employment, and remains in this status, to date.

44.    Defendant's representatives and agents, including but not limited to those referenced in Paragraph 8, above, have failed and refused to consider in good faith the Plaintiff's application for long term disability benefits and, have acted arbitrarily and capriciously, and without good cause, in denying the Plaintiff's application for long term disability benefits.

45.    Defendant has unreasonably failed and refused to approve Plaintiff's application for long term disability benefits, despite the fact that Plaintiff is clearly qualified for said benefits and has fulfilled all conditions precedent established by the Defendant in order to qualify for those benefits.

46.    On or about February 15, 2005, Defendant informed Plaintiff that he had exhausted his rights of appeal, and that no further appeals would be considered. Defendant indicated that they had enlisted a vocational rehabilitation counselor to review

his job descriptions, who purportedly advised Defendant that Plaintiff's occupation is considered sedentary "according to the Dictionary of Occupational Titles (DOT)." No further information was provided relative to Defendant review, if any, of Plaintiff's actual job duties, since apparently no good faith and reasonable review was conducted. On information and belief, Plaintiff's treating physician continues to find him totally disabled.

COUNT I<br>EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974<br>29 U.S.C. SECTION 1001-1461

47.  The allegations contained in Paragraphs 1-46, above, are incorporated herein by reference in their entirety.

48.  Defendant, in cooperation with Plaintiff's employer, maintain and/or administer, inter alia, long-term disability plan qualifying as an employee benefit plan pursuant to provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C. Sections 1001-1461 (ERISA.)

49.  Plaintiff qualifies as a participant and/or beneficiary of one or more employee benefit plans maintained by the Defendant, including the Invensys long-term disability plan, within the meaning of 29 U.S.C. 1132(a).

50.    §502(a)(1)(B) of ERISA, 29 U.S.C.S. §1132(a)(1)(B), gives a participant or beneficiary of a plan that is covered by ERISA the right to bring a civil action to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

51.    ERISA, 29 U.S.C.S. §§1001-1461, requires a plan to provide participants with adequate notice of the reasons for denying benefits and to afford a reasonable opportunity for a full and fair review.

52.    In retaliation for his having exercised rights to which he is entitled under the provisions of the Invensys long-term disability plan, Plaintiff was discriminated against in Defendant's administration of the benefits of that plan, in violation of ERISA.

53.    By its arbitrary and capricious failure and refusal to find the Plaintiff eligible for the benefits to which he is clearly entitled, Plaintiff was treated unlawfully by Defendant with respect to Defendant's administration of benefits under the Invensys long-term disability plan, pursuant to the terms of ERISA.

WHEREFORE, Plaintiff prays for the relief hereinafter set forth.

## PRAYER FOR RELIEF

Plaintiff prays that judgment be entered against Defendant and in favor of Plaintiff for all damages and equitable relief available, including but not limited to the following:

(a) an order that the Defendant institute and carry out practices, policies and programs which provide lawful treatment to qualified individuals with disability status;

(b) an order that the Defendant make whole the Plaintiff with the value of lost benefits, and interest, in amounts to be proved at trial, and other affirmative relief necessary to eradicate the effects of its unlawful practices, including, but not limited to the award to Plaintiff of the disability benefits to which he is rightfully due;

(c) an order that the Defendant make whole the Plaintiff by providing for any additional pecuniary losses, including but not limited to any costs incurred for health and life insurance premiums, medical treatment while without disabilty benefits;

(d) an order the Defendant make whole the Plaintiff by providing compensation for non-pecuniary losses, including emotional pain, suffering, humiliation, and mental anguish in amounts to be proven at trial, including an appropriate award of compensatory damages; as well as any special damages provided by ERISA.

(e) grant attorney's fees and the costs of this action;

(f) grant punitive or exemplary damages, as appropriate to punish the Defendant for its malicious conduct and/or for its reckless and/or callous indifference to the statutorily protected rights of the Plaintiff;

(g) grant an appropriate award of prejudgment interest, including an award of interest for all damages awarded to the Plaintiff from the date this cause of action accrued.

(h) grant such further relief as this court deems necessary and proper.

Respectfully Submitted,
Ashwani D. Budhiraja,
By His Attorney,

Stephen T. Fanning #542343
305 South Main Street
Providence, RI 02903
401-272-8250
401-272-4520 (FAX)